IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES S. FARLOW, Jr, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:23-cv-01661-B |
| | § | |
| L3 COMMUNICATIONS | § | |
| INTEGRATED SYSTEMS LP, | § | |
| An unregistered foreign entity, | § | |
| | § | (JURY TRIAL DEMANDED) |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW the Plaintiff, Charles. S. Farlow, Jr. ("Plaintiff"), filing this his First Amended Complaint complaining of the wrongful and unfair employment practices of his former employer, the Defendant, L3 Communications Integrated Systems, LP, an unregistered foreign entity, one and the same company as L3 Harris Technologies, Inc., ("Defendant"), and in support thereof shows the Court:

I.
### INTRODUCTION

Charles Farlow had almost thirty years of engineering experience and requisite security clearances in the aerospace/defense industry. Beginning in the mid-1990's as a senior level technical specialist with Raytheon E-Systems and, having an excellent performance and spotless record, Raytheon promoted Mr. Farlow through its engineering ranks to a management position. Mr. Farlow was eventually recruited by Defendant and hired as a Test Engineer Leader on September 11, 2011. After receiving promotions and raises, Mr. Farlow eventually became a Systems Integration Engineer for

Defendant leading a team which, among other functions, was responsible for troubleshooting components of particular products. His yearly performance reviews were very good as well as his relationships with management and employees.

In the summer of 2019, Bob Kruger, Plaintiff's supervisor, told Plaintiff the company had a contract program named "Corvus" and explained the program was over budget and had a lot of quality issues. Mr. Kruger advised that Plaintiff was chosen to take over the program. The company was going to reclassify the position as an Engineering position as assembly, build and test. The company provided meetings to study as to how to keep the program within budget. Having received no notes or improved processes from the concluded meetings, Plaintiff on his own was successful in building the project within budget. In the Fall of 2019, the system Plaintiff built passed the engineering lab test, final acceptance and was delivered to the flight line for installation on schedule. Plaintiff's year end reviews were excellent, and he received a pay raise. Work for Plaintiff kept coming in with demands to keep up required overtime.

In 2020, Plaintiff worked many hours overtime to keep up with the work schedule demands. Again, Plaintiff's yearly review was excellent, and he received a substantial raise. In June 2021, Plaintiff learned that L3Harris had taken over L3 Communications and that his job was reclassified. In November 2021, Plaintiff's supervisor, Mike Leonard told Plaintiff he was opening a new position for a Systems Integration Level 3 and wanted Plaintiff to apply. Plaintiff did so and was promoted to that position with a substantial pay increase. Plaintiff was told the promotion and pay increase were well deserved. In December 2021, Mike Leonard left Defendant to work for a competitor. In January 2022, Plaintiff's new Department Manager, Jerry Herrera, moved newly hired Mohamed Kalim from an Engineer position to which he was newly hired to Plaintiff's department as supervisor/manager. Mr. Kalim had no experience in the operation and processes involved in the department. In January 2022, Jerry Herrera

held a meeting in the conference room to introduce himself and Mr. Kalm as the new managers. Mr. Herrera surprised many with his behavior of using excessive profanities and displaying a great deal of arrogance.

Mr. Herrera's excessive displays at the referenced meeting seemed to be at odds with Defendant's newly emphasized philosophies and handbook.

Just later, Mohamed Kalim, who had less experience and training than Mr. Farlow, ignited a continuing conflict with Mr. Farlow. Plaintiff complained to Mr. Herrera who sent department members aa request to reply to him with confidential emails describing their experiences with Mr. Kalim. Plaintiff replied to Mr. Herrera forthrightly describing Mr. Kalim's conduct and Plaintiff's opinions in detail. Mr. Herrera then called a department meeting with everyone attending including Mr. Kalim. Then contrary to Mr. Herrera's previous announcements, Mr. Herrera began to read the confidentially submitted emails while simultaneously backing and supporting Mr. Kalim. Plaintiff had been told by Mr. Herrera that the email feedback would be confidential. It wasn't.

Mohamed Kalim then doubled his efforts in his continued his course of singling out Mr. Farlow, by increasingly harassing Mr. Farlow at every opportunity with uncalled-for questioning behavior, humiliating him in front of his co-workers, accusing Mr. Farlow of lying, belittling him at every turn, engaging in countless episodes of disrespect and work disruption with Mohamed Kalim telling Mr. Farlow he hoped Mr. Farlow would leave the company. An outrageous example was Mr. Kalim's deliberate interference with Plaintiff's productivity. Mr. Kalim was in charge of workflow and without reason, other than to hurt Mr. Farlow, deliberately disrupted and held up production due Plaintiff so that Plaintiff frequently fell behind due to Mr. Kalim's deliberate stoppages and workflow interruptions.

It was clearly evident by his daily derogatory language, humiliating demeanor and hostile attitude expressed continually toward Plaintiff, that Mohamed Kalim had singled out Mr. Farlow hoping

to coerce Mr. Farlow to resign and leave the company. Nevertheless, Mr. Farlow continued a respectful and subservient posture during Mr. Kalim's shocking forays; however, eventually Mr. Farlow concluded he had no choice but to complain again to Mr. Herrera. Mr. Farlow even spoke with Mr. Herrera's supervisor, Derek Hewitt. Nothing was done.

Through no fault of his own, Mr. Farlow's work life had become unbearable because of Mohamed Kalim. Mr. Herrera did nothing. Mohamed Kalim persisted in his wrongful and outrageous conduct toward Mr. Farlow and Mr. Farlow persisted in his complaints to Mr. Herrera. Mr. Herrera did nothing, except at the end tell Mr. Farlow that "you complain too much" or words to that effect. Motivated by its malicious discriminatory intent, Defendant was gearing up to retaliate against Mr. Farlow. Eventually, Mr. Herrera came into Mr. Farlow's laboratory and told him to train younger employees to do your job because "you are holding me hostage." Mr. Farlow was highly skilled and hard working. Shortly thereafter, Mr. Farlow was called into Defendant's HR office and terminated by Sarah Humphrey who said "everyone you work with is not a Christian; you can't speak about your faith in the workplace, and you listen to podcasts" or words to that effect. No other employee was the victim of the wrongful treatment inflicted by Mohamed Kalim and endured by Mr. Farlow. He was singled out by Mr. Kalim, and backed by Defendant, because of Mr. Farlow's age, and, as Defendant's HR Representative said because he is a Christian. Mr. Farlow complained. Mr. Herrera and Defendant retaliated against Mr. Farlow, terminated his employment, and replaced Mr. Farlow with a younger less experienced new hire, Nguyen Nguyen, an Asian American.

## II.
## JURISDICTION AND VENUE

1. **Jurisdiction.** This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367(a). The action arises under the Constitution and laws of the United States and the laws of the State of Texas. The causes of action alleged by Plaintiff are brought pursuant to 42

U.S.C. §§ 2000e, *et. seq*., known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and its related anti-retaliation and anti-harassment statutes, applicable regulations, and also the corresponding and correlative statutes enacted in the State of Texas known as the Texas Labor Code §§ 21.001., et. seq.

2. Plaintiff also claims Defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 and its related anti-retaliation and anti-harassment statutes, applicable regulations, and also the corresponding and correlative statutes enacted in the State of Texas known as the "Texas Labor Code" §§ 21.001., et. seq.

3. Plaintiff is domiciled and resides in Rockwall County, Texas. Plaintiff is an adult Caucasian male, over 40 years of age, espousing the Christian faith. His employment was wrongfully terminated and was replaced by a younger new hire, Nguyen Nguyen, an Asian American. Mr. Farlow is protected by both Title VII and by the ADEA.

4. Plaintiff was at all relevant times herein an " employee" of the Defendant within the meaning of the 42 U.S.C. § 2000e(f) and corollary statutes within the ADEA and the Texas Labor Code.

5. The Defendant is a contractor doing business at 1001 Jack Finney Blvd., City of Greenville, County of Hunt, State of Texas 75402, which is within the jurisdiction and venue of this Honorable Court. Defendant was at all relevant times herein an "employer" as defined by Title VII (e.g., pursuant to 42 U.S.C. §2000e(b), the Defendant had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year) and the relevant corollary provisions of the ADEA and the Texas Labor Code.

6. In common parlance, Defendant's business involves it as a member of the U.S. military industrial complex and as such Defendant was an employer engaging in an industry affecting

commerce.

7. **Venue.** The employment practices alleged to be unlawful herein and a substantial part of the events or omissions giving rise to Plaintiff's claims were committed within the Northern District of Texas, Dallas Division as above alleged. Venue is appropriate in this Court pursuant to 42 U.S.C. §2000e(5) and 28 U.S.C. §1391.

III.
## PARTIES AND SERVICE OF PROCESS

8. **Unregistered foreign entity.** The Defendant has wholly failed to register to do business or otherwise seek authorization to do business in the State of Texas and has no declared Registered Agent with the Texas Secretary of State and, therefore, transacts business in this State without being registered according to the applicable provisions of the Texas Business Organizations Code ("TBOC").

9. **Service of Process.** Accordingly, service of process upon Defendant may be had through the Secretary of State of the State of Texas, pursuant to Section 2. 5.251 of the TBOC, addressed as follows:

> SECRETARY OF STATE
> JAMES E. RUDDER BUILDING
> 1019 BRAZOS, ROOM 105
> AUSTIN, TX 78701

10. **Corporate Headquarters Address.** On Information and belief, Defendant's corporate headquarters' address of record, and place of permanent employment of its Chief Executive Officer, is as follows:

> L3 COMMUNICATIONS INTEGRATED SYSTEMS
> 1025 W. NASA BLVD.
> MELBOURNE, FL. 32919

## IV.
## VICARIOUS LIABILITY

11. Whenever in this Complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such an act and/or that at the time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's respective supervisors, agents, servants, employees, or representatives. Specifically, the acts of the Defendant described hereafter, were undertaken by then authorized representatives of the Defendant, including but not limited to the following individuals: Jerry Herrera; Mohamed Kalim.

## V.
## ADMINISTRATIVE PRE-REQUISITES

12. Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on April 4, 2023. In that Charge, No. 450-2023-04553, and any amendments and/or attachments thereto, Plaintiff asserted that Defendant discriminated against him and further retaliated against him because of his age, race and religion.

13. The EEOC issued Plaintiff a right to sue letter on May 1, 2023, which is attached hereto as Exhibit A and made a part hereof. Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period.

## VI
## FACTS

14. After years of successful experience with Raytheon, Plaintiff was approached in August 2011 and asked if he would be interested in working for Defendant.

15. On September 11, 2011, Plaintiff accepted a position with Defendant as a Lead Test Engineer. Keith Toney was his supervisor. Mike Knous was his manager. He worked with Rick Burkhardt. All four had worked together at Raytheon.

16. Defendant had received a new contract and Plaintiff was very busy having excellent rapport with management and employees. That was not to last. Plaintiff eventually experienced the worst kind of harassment, retaliation, and eventual termination all in violation of Title VII and the ADEA. A summary of a few, but not all, of the episodes leading to those harmful events are set out as follows.

17. Plaintiff's work life was optimal. In the Spring of 2016, Defendant's contract was ending, and Plaintiff's work was slow. He was loaned out to other departments and found himself needed because he had antenna experience. In his third week of being loaned out he accepted a position in the Antenna Range and began to work for Brett Erwin, his new supervising manager and Derek Girvin, his new department manager. Plaintiff had substantial work and an even more pleasant work experience.

18. About three years later, Bob Kruger became Plaintiff's supervisor and later discussed with Plaintiff concerns over a new contract that was over budget with several quality issues. Mr. Kruger told Plaintiff that Plaintiff had been chosen to take over the troubled program which was known as the Corvus Systems.

19. Plaintiff did so and after months of effort the first system Plaintiff built passed all inspections, was within budget, and delivered on time.

20. In about November 2021, Plaintiff was promoted to Systems Integration Level 3 and received a substantial pay increase. Jerry Herrera then took over as department manager.

21. Defendant had expended time and resources in holding mandatory classes concerning Diversity, Equity and Inclusion and issued a new employee handbook emphasizing necessities of dignity and respect. A true and correct copy of that handbook is attached, marked as "Exhibit B" and by this reference is made a part hereof.

22. A month later, Defendant hired Mohamed Kalim as an engineer to support a new program unrelated to Plaintiff's. One day, Plaintiff was working in one of the test chambers with two other employees training them on testing in the chambers, when Mohamed Kalim walked inside. Plaintiff stopped introduced himself and cordially welcomed him to L3. Mohamed Kalim responded that he was glad to be there because his former employer had not treated him well. That was the last pleasant conversation Plaintiff had with Mr. Kalim.

23. In early 2022, Plaintiff's supervisor, Mike Leonard, resigned from Defendant and took a job with Raytheon. Jerry Herrera then promoted Mohamed Kalim to the position of supervisor over Plaintiff. It was obvious to everyone that Mohamed Kalim had little experience in Plaintiff's operational responsibilities, the operation and processes involved in the department, much less than Defense contracts in general.

24. Mohamed Kalim's first big change was to conduct daily morning standup meetings where he lectured about company policies and expected employee conduct. He continuously stated if the employees did not obey, employees would be terminated. Some individuals resigned because the work environment became very toxic under Mohamed Kalim's watch. One such individual was a very productive senior engineer, Jeff Tippen.

25. Jeff had given very short notice. Plaintiff then took the occasion to tell Mohamed Kalim that Plaintiff was sorry that Jeff had resigned so abruptly and that was not fair to Mohamed Kalim.

26. Mohamed Kalim then just glared at Plaintiff and harshly said, "I'm ok with Jeff leaving and if you (referring to Plaintiff) wanted to leave also, that would be ok, too" or words to that effect. Mohamed Kalim then abruptly turned and left Plaintiff saying nothing more.

27. A female employee later complained to Plaintiff at her discomfort with Mohamed Kalim's leering at her, standing close to her and so forth. Plaintiff told her she must report it to the

Department Manager to which she responded that she was not comfortable doing that. This employee then had Defendant's HR to change her race and national origin to Philippine and later reported to Plaintiff she had no more trouble. In fact, this employee obtained approval on at least three requested transfers while Plaintiff's requests fell on deaf ears.

28. Mohamed Kalim had little, or no knowledge of the work Plaintiff and his crew were doing on their assigned project. When a crew member got in a dispute with Mohamed Kalim over rejecting the quality of some component parts, Plaintiff attempted to intervene whereupon Mohamed Kalim told Plaintiff to his face in front of his crew that Plaintiff was a liar. Plaintiff was openly humiliated by Mohamed Kalim. Plaintiff complained to Department Manager Herrera that Mohamed Kalim had singled Plaintiff out because of his age and his religion. Mr. Herrera did nothing.

29. Plaintiff submitted several requests to be transferred to be under the supervision of other specified supervisors. None of his requests were granted. In this process, Plaintiff had some serious discussions with another supervisor about Plaintiff needing more room to work. The proposal seemed agreeable, and Plaintiff was told a formal request would be made to Defendant. Plaintiff later followed up on the matter and that supervisor acted surprised that Plaintiff had not already heard back from Defendant. That supervisor told Plaintiff that changes were coming. Those changes were not what Plaintiff expected.

30. Plaintiff then had occasion to report to the department manager, Jerry Herrera, what the particular female employee had told Plaintiff about Mohamed Kalim's conduct. Jerry Herrera then sent a confidential email to the department asking for input on Mohamed Kalim's performance. Plaintiff was assured that, according to Defendant's policy, all replies were to be confidential. They weren't. Jerry Herrera's response was to call a meeting with the department for everyone to speak

frankly to Mohamed about their concerns. The outcome was a disaster. Jerry Herrera stood up for, sided with and supported Mohamed Kalim knowing that Plaintiff was singled out and harassed because of Plaintiff's age and because of Plaintiff's religion (Christian).

31. Mohamed Kalim called Plaintiff to his office, and removed all documents and reviews which stated Plaintiff had performed exceeding expectations, etc. As he ripped them from Plaintiff's personnel file Mohamed Kalim said "No one exceeds expectations" or words to that effect. No other employee was subjected to this behavior by Mohamed Kalim.

32. No other employees received similar humiliating and berating treatment from Mohamed Kalim.

33. Jerry Herrera came to Plaintiff and ordered Plaintiff to train some *younger* employees in how to operate the system in which Plaintiff had been placed in charge. Plaintiff replied that the system was complex and that the *younger* individuals he requested be trained did not have the necessary. background or experience to undertake the training or responsibilities. Jerry Herrera then told Plaintiff that "You are holding me hostage" meaning Plaintiff couldn't then be removed from his position. He also told Plaintiff that Plaintiff complained too much and that he, Jerry Herrera, was tired of it. Nevertheless, Plaintiff began to undertake the task that Jerry Herrera required.

34. As stated, other employees were freely given requested transfers. Plaintiff had always been denied them.

35. Later, on September 6, 2022, Plaintiff was called into HR. Sarah Humphrey, Defendant's HR representative terminated Plaintiff's employment. Plaintiff was told by Ms. Humphrey that not everyone he worked with at Defendant's facility is Christian, that can't talk about his Christian faith under any circumstances in the workplace and that the listens to "podcasts."

36. Defendant's reasons then given by its HR representative were pretextual and baseless. Defendant fired Plaintiff because of his age, and that he supposedly spoke about his Christian faith in the workplace contrary to company policy which Defendant contends exists, but it does not exist and because Plaintiff was engaged in protected activity when Plaintiff complained about the discriminatory treatment Plaintiff was receiving from Mohamed Kalim.

37. Plaintiff was replaced by a younger Asian American employee named Nguyen Nguyen.

38. Defendant's termination of Plaintiff's employment was contrary to Defendant's policies and procedures.

## VII
## CAUSES OF ACTION

### A. Violations of Title VII.

39. Plaintiff repeats and re-alleges by reference each and every allegation contained in paragraphs 1-38 above, including the Introduction in Paragraph "I.", and incorporates the same herein as though fully set forth.

40. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII, by intentionally interfering with Plaintiff's performance of his employment because of his religion (Christian) by harassing him, retaliating against him because he complained and terminating his employment, which led to the loss of all of the wages, benefits, privileges, and other terms and conditions of Plaintiff's employment with the Defendant, including future wages and benefits.

41. On numerous occasions, Plaintiff was engaged in protected activity by complaining to the department manager, Jerry Herrera, of the discriminatory treatment inflicted on Plaintiff by Mohamed Kalim

42. The above-described acts on the Defendant's part caused Plaintiff substantial emotional

injury, mental distress, and damages.

### B. Violations of the ADEA

43.   Plaintiff repeats and re-alleges by reference each and every allegation contained in paragraphs 1-42, including the Introduction in Paragraph "I., above and incorporates the same herein as though fully set forth.

44.   Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADEA, by intentionally interfering with Plaintiff's performance of his employment because of his age, over 40 years, by marginalizing him, harassing him, retaliating against him because he complained, terminating his employment, and replacing him with a younger Asian American employee who had less experience, was less qualified and had been with the Defendant less time than Plaintiff, named Nguyen Nguyen all of which led to the loss of all of the wages, benefits, privileges, and other terms and conditions of Plaintiff's employment with the Defendant, including future wages and benefits.

45.   Plaintiff was about 67 years old and qualified for his position, able to perform all its essential functions and was doing so when Defendant fired him.  In addition, Jerry Herrera, Mohamed Kalim, and others on behalf of Defendant marginalized Plaintiff while treating younger similarly situated employees more favorably. During one of the occasions Plaintiff complained to his department manager, Jerry Herrera, about the discriminatory treatment he was receiving from Mohamed Kalim, Plaintiff requested to be transferred to another department in whose functions, Plaintiff's systems work would fit.  Defendant refused but freely transferred younger employees who had less experience and whose transfers would not fit as well as Plaintiff's transfer request.

46.   On numerous occasions, Plaintiff was engaged in protected activity by complaining to the department manager, Jerry Herrera, of the discriminatory treatment inflicted on Plaintiff by

Mohamed Kalim.

47. The above-described acts on the Defendant's part caused Plaintiff substantial emotional injury, mental distress, and damage.

### C. Emotional Distress and Severe Mental Anguish Compensation Damages.

48. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-47 above and incorporates the same by reference as though fully set forth herein,

49. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and retaliation against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## VIII.
## JURY TRIAL DEMANDED

50. Plaintiff requests that this action be heard before a jury.

## IX.
## DAMAGES

51. The Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in his occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer emotional and mental health injuries, humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered these direct injuries as a proximate result of the unlawful discriminatory practices, policies, and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages in an amount to be proved at trial.

52. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him in these causes of action Plaintiff has agreed to pay him attorney reasonable attorney' s fees for the and trial of these causes, and further for any

appeal thereof should same become necessary.

53. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

54. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VI.

## **PRAYER**

WHEREFORE, premises considered, Plaintiff prays that the Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against the Defendant for:

a. Permanent injunction enjoining the Defendant, its agents, successors, employees, and those acting in consort with the Defendant from engaging in any employment practice which discriminates on the basis of race, age, religion and in retaliation thereof.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement, or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, and all other statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

_s/ David M. Curtis_

***DAVID M. CURTIS &ASSOCIATES, PC***
Texas State Bar No. 000527090
7750 N. MacArthur Blvd. STE. 120-373
Las Colinas, TX. 75063-7514
Telephone & Facsimile: 833-444-4714
Email: *david@laborassociates.com*
Cell: 214-244-4714

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of October 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF service, which will serve a copy of such filing on all parties of record via email.

/s/ DAVID M. CURTIS
DAVID M. CURTIS